**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

November 30, 2012

# In the Court of Appeals of Georgia

A12A1348. JMJ PLUMBING et al. v. CUDIHY.

PHIPPS, Presiding Judge.

We granted the application for discretionary appeal of JMJ Plumbing and its workers' compensation insurer, United Business Insurance (collectively, "JMJ"). JMJ appeals from the superior court's order reversing the award of the appellate division of the State Board of Workers' Compensation (the "Board"), which had reversed the award of the administrative law judge ("ALJ"); the ALJ had awarded disability income and medical benefits to Derek Cudihy. JMJ contends that the superior court erred in reversing the Board's award when there was some evidence to support it and the Board had committed no legal error. We agree and reverse the decision of the superior court.

"In resolving this appeal, we must keep in mind the various standards of review applicable in this case. The [Board] is authorized to review the evidence adduced before the ALJ, weigh that evidence, and assess witness credibility."[1] The Board is authorized to "draw factual conclusions different from those reached by the ALJ who initially heard the dispute."[2]

> If the [Board] determines that the preponderance of evidence supports the ALJ's decision, it will accept and affirm that award. But, if the [Board] concludes that the award does not meet the applicable evidentiary standards, it may substitute its own alternative findings for those of the ALJ, and enter an award accordingly. When reviewing awards in workers' compensation cases, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the [Board]. It is axiomatic that the findings of the [Board] . . . , when supported by any evidence, are conclusive and binding.[3]

---

[1] *St. Joseph's Hosp. v. Ward*, 300 Ga. App. 845 (686 SE2d 443) (2009).

[2] *Bonus Stores v. Hensley*, 309 Ga. App. 129, 132 (1) (710 SE2d 201) (2011) (citation and punctuation omitted).

[3] *St. Joseph's Hosp.*, supra at 846 (citation and punctuation omitted).

"[N]either the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board."[4] If there is any evidence to support a finding of the Board, the superior court may not reverse the award, unless errors of law were committed.[5] Unlike the Board, which may weigh the evidence and substitute its own alternative findings for those of the ALJ, a superior court reviewing a decision of the Board performs a more limited review.[6] The Board's decisions based on erroneous legal theories are subject to the de novo standard of review.[7] The question of whether the superior court applied the correct legal standard in evaluating the evidence is one of law, which this court reviews de novo.[8] Every presumption in favor of the Board's award is indulged.[9]

---

[4] *John W. Rooker & Assocs. v. Patterson*, 276 Ga. App. 410 (623 SE2d 258) (2005) (footnote omitted).

[5] *Parker v. American Carpet Mills*, 168 Ga. App. 171, 172 (308 SE2d 409) (1983).

[6] *Bonus Stores*, supra at 132 (2).

[7] *R. R. Donnelley v. Ogletree*, 312 Ga. App. 475 (718 SE2d 825) (2011).

[8] *Bonus Stores*, supra at 133 (2).

[9] *Parker*, supra.

Viewed in the light most favorable to JMJ as the party prevailing before the Board, the record shows that Cudihy worked for JMJ as a plumber. On Tuesday, September 2, 2008, while performing a digging task on the job, Cudihy felt a sharp pain in his back that radiated to his leg. He took a break for a few minutes, then went back to work. Cudihy did not report the injury to his employer, and continued to perform his regular work duties.

After work, Cudihy went to "Physician's Immediate Med" for treatment. He told the treating physician that he had developed back pain over the weekend and had experienced pain while digging that morning; he was diagnosed with muscle spasms and prescribed muscle relaxers. Cudihy sought further treatment at Physician's Immediate Med in January 2009 and was diagnosed with low back pain. Cudihy went to a chiropractor in March 2009, where he was diagnosed with muscle spasms. In May and June 2009, he saw an orthopedist, who diagnosed him with possible disk herniation. On June 3, 2009, the orthopedist recommended that Cudihy be placed on light duty work and stated that he might need surgery.

On June 25, 2009, Cudihy first reported the injury to JMJ, which placed him on light duty work full-time. Cudihy continued to work at JMJ on light duty until August 2009, when he was terminated for reasons unrelated to his injury.

Cudihy subsequently applied for workers' compensation benefits, alleging a June 25, 2009 injury date. JMJ controverted the claim but, after a hearing, an ALJ awarded Cudihy disability income and medical benefits. The ALJ found, among other things, that Cudihy had sustained a work-related injury to his back on September 2, 2008 and, citing the "new accident" theory (regarding a gradual worsening of condition) explained in *Central State Hosp. v. James*,[10] found that he had sustained a work-related injury on June 25, 2009.[11]

The Board vacated the ALJ's award and denied Cudihy's claim. The Board found, inter alia, that the preponderance of the evidence did not support the ALJ's finding that Cudihy had sustained a new accident[12] on June 25, 2009 related to his work. The Board found that Cudihy had not established or reported the occurrence of an initial work injury, making the theory of a fictional new injury (on June 25,

---

[10] 147 Ga. App. 308 (248 SE2d 678) (1978).

[11] Id. at 309 (1) (a) (explaining that a "new accident," also referred to as a "new injury," occurs "where the claimant is injured on the job but continues to perform the duties of his employment until such time that he is forced to cease work because of the gradual worsening of his condition which was at least partly attributable to his physical activity in continuing to work subsequent to his injury"; "the date of the 'new accident' is the date that the disability manifests itself").

[12] It was undisputed that Cudihy did not sustain an *actual* injury on June 25, 2009.

5

2009) inapplicable; and, no disability manifested on the designated new accident date of June 25, 2009, inasmuch as that date did not represent the date Cudihy's condition had worsened as a result of his work activities to the point he could no longer perform his job; the Board noted that Cudihy had continued working beyond that date (June 25) and he had acknowledged that he was capable of working as a plumber at the time he was terminated. The Board also found that no September 2, 2008 injury was compensable because: (a) Cudihy did not establish that he sustained a work injury on September 2, 2008; and (b) Cudihy did not give adequate notice of a work injury to JMJ.[13]

---

[13] See OCGA § 34-9-80 (pertinently providing that every injured employee shall immediately on the occurrence of any accident or as soon thereafter as practicable, give or cause to be given to the employer a notice of the accident; until such notice is given, the employee shall not be entitled to any physician's fees nor to any compensation which may have accrued under the terms of this chapter prior to the giving of such notice; and, with certain exceptions, no compensation will be payable unless the required notice is given within 30 days after the occurrence of an accident).

Cudihy appealed to superior court.[14] In reversing the Board's award, the superior court found that the Board's findings of fact appeared to be supported by evidence of record, but that the Board's legal analysis was erroneous. According to the superior court, the Board erred in considering only whether the legal theory of new accident applied and whether Cudihy had established that an injury occurred on September 2, 2008; the superior court further found that the Board should have considered whether the legal theory of cumulative trauma[15] applied to the facts found. The superior court found that the evidence showed a gradual injury, and that Cudihy had established a cumulative trauma injury arising out of and in the course of his employment.

To support its finding that Cudihy had established a cumulative trauma injury, the superior court made various findings of fact. Among the court's findings: Cudihy

---

[14] The court reversed the award as to medical benefits, but did not disturb the Board's ruling that Cudihy was not entitled to income benefits due to his failure to satisfy the job-search requirements of *Maloney v. Gordon County Farms*, 265 Ga. 825, 827-828 (462 SE2d 606) (1995). The Board's ruling as to income benefits was therefore affirmed by operation of law. See *Miller v. Merck & Co.*, 199 Ga. App. 722 (405 SE2d 761) (1999).

[15] See *D. W. Adcock, M. D., P. C. v. Adcock*, 257 Ga. App. 700, 702 (1) (572 SE2d 45) (2002) ("Cumulative trauma over time, which does not lend itself to identifying a specific incident or date as the onset of the injury, nevertheless may be found to be an injury under [the Workers' Compensation Act].").

7

"began having back pain related to his work duties" and, as he continued to work full-duty, "his injury gradually worsened from simple back pain to a herniated disk"; and Cudihy's pain, symptoms, and diagnoses worsened between the time he first began experiencing pain and June 25, 2009, when he became unable to perform the same work. Finding that Cudihy had established a gradual injury caused by deterioration of his back due to daily work activities and that, under the cumulative trauma theory, Cudihy was not required to prove he was injured on September 2, 2008, the court concluded that Cudihy was entitled to medical benefits.

JMJ contends that the superior court exceeded its authority when it found that Cudihy had sustained a cumulative trauma injury on June 25, 2009. JMJ asserts that the court failed to employ the proper standard of review of the Board's award and substituted itself as finder of fact. We agree.

The Board found that Cudihy had failed to show that he sustained a new accident on June 25, 2009. The Board cited, among other things, evidence that: Cudihy had injured his back during the weekend preceding September 2, 2008; when seeking medical treatment on September 2, 2008, he did not indicate that he was injured on the job, even when specifically asked; he admitted he had not sustained any injury on June 25, 2009; he did not become unable to work on June 25, 2009, as

8

he continued working until August 12, 2009, when he was fired for unrelated reasons; and, by his own admission, at the time of his termination he was physically capable of continuing to perform his job, he worked as a plumber after his termination, and his work activity did not worsen his condition. There was also evidence that Cudihy suffered no injury on the job after September 2, 2008, that his symptoms were the same on September 2, 2008 as they were at the time of the administrative hearing, and that all of his pain was attributable to the September 2, 2008 accident.

"For accidental injury to be compensable under the Workers' Compensation Act, the injury must . . . occur in the course of the employment . . . [and] arise out of the employment."[16] "An injury that occurs during a time when the employee is off duty and is free to do as he or she pleases and when the employee is not performing any job duties is not compensable under the Workers' Compensation Act."[17] Whether an injury arose out of and in the course of employment is an issue of fact,[18] as is the

---

[16] *St. Joseph's Hosp.*, supra at 848 (1) (citations and punctuation omitted).

[17] *Stokes v. Coweta County Bd. of Educ.*, 313 Ga. App. 505, 509 (722 SE2d 118) (2012) (citations omitted).

[18] *Davidson v. Employers Ins. of Wausau*, 139 Ga. App. 621 (229 SE2d 97) (1976).

9

issue of whether a new accident occurred.[19] The superior court must defer to the Board's findings because the fact-finding body must in each case remain the final arbiter of the compensability of the injury.[20] The Board's findings, when supported by any evidence, are conclusive and binding.[21] Because some evidence supported the Board's findings that Cudihy had failed to prove that he was injured on the job and that he continued to perform his job duties until he was forced to stop work due to a gradual worsening of his condition,[22] the superior court erred in not accepting that finding and in reversing the Board's award.[23]

Cudihy counters that the superior court did not engage in fact-finding, but simply applied the correct legal theory to the facts found by the Board. As noted above, the superior court is authorized to reverse the Board's award where legal

[19] *Northbrook Prop. & Cas. Ins. Co. v. Babynak*, 186 Ga. App. 339, 341 (367 SE2d 567) (1988); *U. S. Fidelity & Guar. Co. v. Reynolds*, 146 Ga. App. 615 (247 SE2d 199) (1978).

[20] *St. Joseph's Hosp.*, supra.

[21] *Jones County Bd. of Educ. v. Patterson*, 255 Ga. App. 166, 167 (564 SE2d 777) (2002).

[22] See *Central State Hosp.*, supra.

[23] See *St. Joseph's Hosp.*, supra; *Bibb County v. Short*, 238 Ga. App. 291, 292 (518 SE2d 484) (1999); *United Family Life Ins. v. Sasser*, 224 Ga. App. 871, 873 (482 SE2d 491) (1997).

errors were committed.[24] However, as discussed above, the superior court made its own findings of fact, though it lacked authority to do so.[25]

The Board performed the appropriate review,[26] and its award was not based upon an erroneous legal theory. Indeed, the Board fully considered the legal theory raised by JMJ in its appeal to the Board (and the legal theory upon which the ALJ's award was based) – that of "new accident." In deciding the applicability of the new accident theory, the Board cited and applied appropriate authority to the facts it found.[27] In finding no new accident, the Board specifically found that Cudihy's work activity had not worsened his condition. That finding was supported by record evidence, such as Cudihy's testimony that: as of March 2009, his pain had not subsided and "never completely went away"; the pain was "not going to be something that would just go away on its own"; he continued regularly duty work for several months; his symptoms were the same at the time of the hearing as they were on the

---

[24] See *Parker*, supra.

[25] See *John W. Rooker & Assocs.*, supra.

[26] See *Bonus Stores*, supra.

[27] See *Central State Hosp.*, supra.

11

date of the injury (September 2, 2008); and all of his pain was due to the September 2, 2008 accident.

Notwithstanding the Board's finding that Cudihy's condition had *not* worsened due to his work activity, the superior court found that Cudihy's injury *had* worsened "due to daily work activities," and then used that finding to support an alternative legal theory as grounds for reversing the Board's award. It was not the superior court's role to find its own facts and then determine whether an alternative theory required a different outcome.[28] Instead, where possible, the Board's award should be given a construction which will uphold and validate it rather than one that would defeat and invalidate it.[29] Because the Board's award was not legally erroneous and was supported by some evidence, the superior court erred in reversing it.

*Judgment reversed. Ellington, C. J., and Dillard, J., concur.*

---

[28] See *St. Joseph's Hosp.*, supra.

[29] *Dixie-Cole Transfer Trucking Co. v. Fudge*, 147 Ga. App. 306, 307 (3) (248 SE2d 694) (1978).

12